UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>                  Plaintiff,<br><br>     v.<br><br>Cosme Rodriguez,<br><br>                  Defendant. | No. 2:11-cr-00097-KJM<br><br>ORDER |

Cosme Rodriguez pleaded guilty to conspiring to distribute methamphetamine in 2013. The court sentenced him in 2016, and he currently is serving a term of supervised release. He moves to vacate his sentence under 28 U.S.C. § 2255 based on ineffective assistance of counsel. The government moves to dismiss the petition as untimely and as barred by Mr. Rodriguez's agreement to waive his right to collaterally attack his sentence. For the reasons explained in this order, the motion to dismiss is **granted in part**, and the motion to vacate is **denied**.

**I.      BACKGROUND**

Mr. Rodriguez was arrested in a DEA buy-bust operation. *See* Factual Basis at 1–2, Plea Agmt. Ex. A, ECF No. 75. He was participating in a conspiracy to sell five pounds of methamphetamine to a confidential informant. *See id.* He was unarmed. *See* Stmt. of Reasons, ECF No. 140. His role was essentially to act as a courier or escort. *See id.*; Factual Basis at 2. The deal was a single transaction, and he had done nothing like this before; he appeared to have

1    been driven to join in the deal by financial distress. *See* Stmt. of Reasons, ECF No. 140. He was

2    charged with two counts: possessing the drugs and participating in the conspiracy. Plea Agmt. at

3    1; Indictment, ECF No. 10. Each count carried a statutory ten-year minimum prison term and a

4    five-year minimum term of supervised release. *See* 21 U.S.C. § 841(b)(1)(A)(viii); Plea Agmt. at

5    8. Mr. Rodriguez was originally represented by appointed counsel, but later retained a private

6    attorney, D. Randall Ensminger, who represented him through sentencing, at times overcome by

7    emotion. *See* ECF Nos. 24–26. Counsel at the Benevidez Law firm also consulted with

8    Mr. Ensminger during sentencing about the immigration consequences of a guilty plea.

9    *See* Opp'n at 3, ECF No. 171.

10       Mr. Rodriguez pleaded guilty to one of the two counts against him (the possession charge)

11   in a written plea agreement. ECF No. 75. The agreement expressly waives Mr. Rodriguez's right

12   "to bring a post-appeal attack on his conviction or his sentence." *Id.* at 11. "He specifically

13   agree[d] not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or

14   sentence." *Id.*

15       The court discussed the plea and the agreement with Mr. Rodriguez. He agreed he was

16   "fully satisfied with the advice, counsel and representation that Mr. Ensminger ha[d] given

17   [him]," but he hesitated in giving that answer and admitted he was "kind of lost," even though he

18   trusted Mr. Ensminger. Hr'g Tr. at 7, ECF No. 160. He also agreed he had decided to plead

19   guilty voluntarily, but he felt he had "no choice." *Id.* at 7–8.

20       The court then asked the government to summarize the terms of the agreement. *Id.* at 9.

21   Counsel explained that among other adverse consequences, the plea agreement embodied Mr.

22   Rodriguez's recognition "that deportation is a distinct possibility, and even a likelihood, in this

23   case" after he completed his term of imprisonment. *Id.* at 10. When the court asked if

24   Mr. Rodriguez understood "that a plea of guilty can result in . . . denial of naturalization,

25   exclusion from this county or deportation," he said that was "the first time" he had heard about

26   "deportation." *Id.* at 13–14. After speaking briefly with Mr. Ensminger off the record, however,

27   he understood he was "at risk" of being sent out of the country at the conclusion of his sentence.

28   *See id.* at 14–15. The court also asked Mr. Rodriguez if he understood "that typically, without the

1  kind of agreement [he was] presenting to the Court," he would "have the right to appeal" his
2  sentence and "to file a motion, after sentencing, seeking to reduce [his] sentence or vacate it."
3  *Id.* at 18. He did. He also understood he could not withdraw his guilty plea if later he was "not
4  happy with the sentence." *Id.* at 18–19.
5        Later in the hearing, after the government explained the elements of the changed offenses,
6  Mr. Rodriguez also seemed to question how the government could prove him guilty of joining a
7  conspiracy. *See id.* at 22. The court went into recess to permit him to consult with
8  Mr. Ensminger. *See id.* at 22–24. After the recess, despite what Mr. Ensminger described as
9  "lingering concern" about the conspiracy charge, Mr. Rodriguez decided to move forward with a
10 plea on the possession charge as he had agreed. *See id.* at 24–25.
11       Mr. Rodriguez was sentenced to one year and one day in custody and five years'
12 supervised release. Sentencing Mins., ECF No. 135. As noted above, the statutory mandatory
13 minimum sentence for Mr. Rodriguez's conviction was ten years; the reduction was possible
14 under 28 U.S.C. § 3553(f), which permits lower sentences on the government's recommendation
15 when a defendant has, among other things, "truthfully provided to the Government all
16 information and evidence the defendant has concerning the offense or offenses that were the same
17 course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5); *see also* Plea Agmt.
18 at 9. Judgment was entered. ECF No. 139.
19       Mr. Rodriguez moves to vacate or set aside his sentence under 28 U.S.C. § 2255. He
20 argues Mr. Ensminger provided ineffective assistance during plea negotiations and sentencing
21 and makes three claims. *See* Mot. Vacate at 5, ECF No. 146; Opp'n at 1–3, ECF No. 171. First,
22 he claims Mr. Ensminger advised him inaccurately that if he pleaded guilty to a felony, avoiding
23 removal from the United States would be "difficult" but "do-able." *See* Mot. Vacate at 5. An
24 effective attorney, he argues, would have warned him instead that removal from the United States
25 was a "virtual certainty." *Id.* Second, Mr. Rodriguez claims Mr. Ensminger wrongly emphasized
26 the negative consequences of a motion to withdraw his guilty plea, such as delays, and neglected
27 to explain "that the standard for withdrawing a guilty plea would be much higher and more
28 difficult" if he waited to do so until after sentencing. *Id.* at 2. Third, he argues Mr. Ensminger

1   provided ineffective assistance in failing to investigate, pursue or advise Mr. Rodriguez about the

2   possibility of pleading guilty to a non-felony charge, such as misprision of felony, so as to avoid

3   the "obstacles" of a felony conviction. *Id.* at 2–3. In sum, Mr. Rodriguez claims if he had known

4   deportation was a "virtual certainty" and withdrawing his guilty plea would be "virtually

5   impossible" after sentencing, he "would have insisted on going to trial." Rodriguez Decl. ¶ 2,

6   ECF No. 172.

7       The government moves to dismiss these claims under the plea agreement's waiver

8   provisions and argues the motion is untimely. Mot. Dismiss, ECF No. 161. Mr. Rodriguez

9   opposes the government's motion. ECF No. 171. The government did not reply.

10  **II.   WAIVER**

11      A defendant's waiver of the right to a collateral attack is enforceable if the waiver was

12  knowing, voluntary and express, and if it encompasses the right to pursue an attack on the ground

13  raised. *See Davies v. Benov*, 856 F.3d 1243, 1246 (9th Cir. 2017); *United States v. Abarca*,

14  985 F.2d 1012, 1013–14 (9th Cir. 1993). "Claims that the plea or waiver itself was involuntary or

15  that ineffective assistance of counsel rendered the plea or waiver involuntary, however, may not

16  be waived." *Davies*, 856 F.3d at 1247 n.2 (citing *Washington v. Lampert*, 422 F.3d 864, 871 (9th

17  Cir. 2005)); *see also, e.g.*, *United States v. Chan*, 721 F. App'x 728 (9th Cir. 2018) (unpublished)

18  (applying this exception to motion under § 2255).

19      The Ninth Circuit has not decided, however, whether a defendant can waive ineffective

20  assistance claims that do not challenge the waiver or plea agreement itself. *Cf. United States v.*

21  *Martinez-Carranza*, 693 F. App'x 672 (9th Cir. 2017) (unpublished) (declining to reach that

22  question). Other circuits have considered the question. All have held that defendants can waive

23  claims of ineffective assistance that do not affect the validity of that waiver or the plea. *See, e.g.*,

24  *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005); *United States v. White*, 307 F.3d

25  336, 341–44 (5th Cir. 2002); *United States v. Cockerham*, 237 F.3d 1179, 1181–83 (10th Cir.

26  2001); *Davila v. United States*, 258 F.3d 448, 450–51 (6th Cir. 2001); *Jones v. United States*,

27  167 F.3d 1142, 1145 (7th Cir. 1999); *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998)

28  (per curiam). District courts in this circuit have held the same. *See, e.g.*, *Martinez-Carranza*,

4

No. 13-00107, 2015 WL 2159821, at *3 (E.D. Cal. May 7, 2015), *aff'd on alternative grounds*, 693 F. App'x 672 (9th Cir. 2017); *Ceja v. United States*, No. 08-0909, 2010 WL 4806904, at *3 (E.D. Cal. 2010); *Pastoriza-Valerio v. United States*, No. 06-1079, 2009 WL 69326, at *5 (S.D. Cal. Jan. 9, 2009). This court has also enforced a waiver of the right to collaterally attack a sentence based on ineffective assistance claims that did not pertain to the validity of the plea agreement. *See United States v. Malauulu*, No. 15- 00124, 2020 WL 3642611, at *3 (E.D. Cal. July 6, 2020).

The timing of the allegedly ineffective assistance often discloses whether the collateral attack or appeal implicates the validity of a plea agreement. For example, an attorney's error cannot have rendered a plea agreement involuntary if it occurred after the defendant had already signed the agreement and agreed to a waiver. This was the case in *Djelevic*, for example. The collateral attack concerned an attorney's alleged failure to seek enforcement of a plea agreement during sentencing, which of course occurred after the defendant signed the plea agreement and had thus waived his right to a collateral attack. *See* 161 F.3d at 106. The Second Circuit enforced the waiver, describing the defendant's motion as an "effort to dress up his claim as a violation of the Sixth Amendment." *Id.* at 107; *see also, e.g.*, *Williams*, 396 F.3d at 1342; *Ceja*, 2010 WL 4806904 at *2.

This court has similarly separated waivable from unwaivable claims by considering whether the allegedly ineffective assistance occurred "prior to or in preparation for execution of the agreement" rather than during plea negotiations. *Malauulu*, 2020 WL 3642611, at *3. In *Malauulu*, the waiver barred a claim about an attorney's alleged failures to "provide discovery" and "conduct an adequate pretrial investigation" because those failures did not infect plea negotiations or the plea agreement. *See id.* (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.")).

Turning to Mr. Rodriguez's motion, there is no dispute that he expressly waived his right to pursue a collateral attack under § 2255, and that waiver makes no express exception for claims

1    of ineffective assistance.  The court must determine which of Mr. Rodriguez's ineffective

2    assistance claims relate to the plea agreement's validity, if any, and thus cannot have been

3    waived.

4          As summarized above, Mr. Rodriguez makes three claims of ineffective assistance.  The

5    first directly asserts ineffective assistance during plea negotiations.  He argues Mr. Ensminger

6    was ineffective in not warning him that removal from the United States was a "virtual certainty"

7    if he pleaded guilty to a felony.  *See* Mot. Vacate at 5.  This claim cannot have been waived; it

8    attacks the plea agreement directly.  *See, e.g.*, *Washington*, 422 F.3d at 868–69 (holding waiver

9    was ineffective against collateral attack alleging "trial counsel failed to inform [the defendant] of

10   the consequences of his accepting the terms of the stipulation and used false promises and

11   inaccurate predictions to get his client to agree to the state's stipulated sentencing offer"

12   (quotation marks omitted)).

13         In his second claim, Mr. Rodriguez argues Mr. Ensminger wrongly urged him not to

14   withdraw his guilty plea and withheld advice that would have counseled in favor of a motion to

15   withdraw prior to sentencing.  *See* Mot. Vacate at 5.  No court appears to have considered

16   whether a waiver is effective against such a claim.  But several courts have rejected waivers

17   against very similar claims, such as "claims of coercion and ineffective assistance of counsel"

18   asserted in support of a motion to withdraw, *United States v. Harrison*, 777 F.3d 227, 233 (5th

19   Cir. 2015), and challenges to "the denial of a motion to withdraw guilty pleas due to ineffective

20   assistance of counsel," *United States v. Cohen*, 888 F.3d 667, 683 (4th Cir. 2018).  Despite the

21   post-plea timing of this aspect of the alleged ineffective assistance, Mr. Rodriguez clearly

22   contends his plea decision was tainted.  In other words, he alleges "ineffective assistance of

23   counsel rendered the plea . . . involuntary."  *Davies*, 856 F.3d at 1247 n.2.  This claim cannot

24   have been waived.

25         The third claim, by contrast, does not implicate the validity of the plea agreement.

26   Mr. Rodriguez argues Mr. Ensminger provided ineffective assistance in failing to investigate,

27   pursue or advise him about the possibility of a non-felony charge.  Mot. Vacate at 5.  This court

28   has held that claims of an attorney's failure to "conduct an adequate pretrial investigation" and

6

1    "negotiate a more favorable plea agreement" rest on errors "prior to or in preparation for

2    execution of the plea agreement" and are thus "subject to waiver." *Malauulu*, 2020 WL 3642611

3    at *3.  The third claim was waived, and so the court will grant the government's motion to

4    dismiss with respect to this claim only.

5    **III.    TIMELINESS**

6           The government argues Rodriguez's motion is untimely.  Motions under § 2255 must be

7    filed within one year of the latest of four events: (1) the "final" conviction; (2) the date a

8    government-imposed impediment to filing the motion was removed; (3) the date the Supreme

9    Court recognized and made retroactively applicable a constitutional right; and (4) the date newly

10   discovered facts supporting the § 2255 claim could reasonably have been discovered.  28 U.S.C.

11   § 2255(f)(1)–(4).

12          Only one of these events is relevant here: the conviction on February 18, 2016.  *See*

13   Judgment, ECF No. 139.  That judgment became "final" after the last day Mr. Rodriguez "could

14   have sought review by direct appeal."  *United States v. Schwartz*, 274 F.3d 1220, 1223 (9th Cir.

15   2001).  In a criminal case, when, as here, the government does not file a notice of appeal, a

16   defendant's notice of appeal of the judgment must be filed within 14 days after entry of the

17   judgment.  Fed. R. App. P. 4(b)(1)(A).  Mr. Rodriguez's judgment thus became "final" for

18   purposes of calculating the one-year limitations period on March 4, 2016.

19          But his § 2255 motion was filed more than one year later, on April 3, 2017.  ECF No. 146.

20   Mr. Rodriguez argues it would nonetheless be timely if this court grants him a retroactive

21   extension of time under Federal Rule of Appellate Procedure 4(b)(4).  That rule permits a district

22   court to grant a thirty-day extension of time to file a notice of appeal upon a finding of "excusable

23   neglect or good cause," even "after the time has expired."  These are "familiar terms in the world

24   of judicial procedure, and both represent relatively malleable concepts."  *United States v.*

25   *Navarro*, 800 F.3d 1104, 1109 (9th Cir. 2015).  "An analysis of 'excusable neglect' generally

26   requires a court to analyze the four factors set out by the Supreme Court," *id.* (citing *Pioneer Inv.*

27   *Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993)): the danger of prejudice, the

28   length of the delay and its potential impact on the proceedings, the reason for the delay, and

whether the movant acted in good faith, *Pioneer*, 507 U.S. at 395. "'Good cause' is a non-rigorous standard that has been construed broadly across procedural and statutory contexts." *Navarro*, 800 F.3d at 1109 (quoting *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010)).

Mr. Rodriguez has demonstrated excusable neglect and good cause. There is no perceptible danger of prejudice to the government as a result of his delay, which was not lengthy and had no impact on these § 2255 proceedings. The delay was the result of Mr. Rodriguez's detention far away from home and his difficulty finding an attorney. Rodriguez Decl. ¶ 1, ECF No. 172. The court finds no bad faith. He is thus entitled to a retroactive thirty-day extension of the deadline to file a notice of appeal. With that extension, the limitations period began running on April 4, 2016, so his April 3, 2017 motion was timely.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

The court now turns to the merits of Mr. Rodriguez's first and second claims, which as discussed above he did not waive. To successfully set aside or vacate his conviction and sentence based on ineffective assistance of counsel, he must satisfy the familiar two-part test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Torrey v. Estelle*, 842 F.2d 234, 237 (9th Cir. 1988) (applying *Strickland* to habeas proceeding involving collateral consequences of plea). "Surmounting [this] high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010).

A defendant must first show the representation "fell below an objective standard of reasonableness" as measured against the "prevailing professional norms" of the legal community, reflected in "American Bar Association standards and the like." *Id.* at 366 (quoting *Strickland*, 466 U.S. at 688). But "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. It is "all too easy" to conclude after the fact "that a particular act or omission of counsel was unreasonable." *Id.* "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second part of the *Strickland* test asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

1   *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the
2   outcome." *Id.*  Under *Strickland*, Mr. Rodriguez must therefore demonstrate that, but for his
3   attorney's errors underlying each of his two claims, he "would either have gone to trial or
4   received a better plea bargain."  *United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir.
5   2015) (quoting *United States v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004)).

6       In his first claim, Mr. Rodriguez contends the representation was ineffective because
7   Mr. Ensminger gave him too rosy an assessment of the risk of removal.  There is no question
8   counsel was required to advise Mr. Rodriguez about the "the risk of deportation." *Padilla*,
9   559 U.S. at 367.  Nor is there any doubt that when a plea agreement contemplates a conviction for
10  a "removable offense," such as drug trafficking offenses, removal is "'practically inevitable.'"
11  *Rodriguez-Vega*, 797 F.3d at 878 (quoting *Padilla*, 559 U.S. at 363–64).  In these circumstances,
12  attorneys must advise clients that the removal is "virtually certain" or use other "words to that
13  effect." *Id.*  Mr. Ensminger did not do that here.  He warned Mr. Rodriguez only that it would be
14  "difficult" to avoid deportation, but "do-able."  Mot. Vacate at 5.  His advice therefore fell below
15  professional standards.  The court's and the government's warnings during the plea hearing, that
16  removal was a "possibility" or even "a likelihood," did not cure that error.  Warnings during a
17  plea colloquy are "simply irrelevant to the question whether *counsel's* performance fell below an
18  objective standard of reasonableness." *Rodriguez-Vega*, 797 F.3d at 787 (emphasis in original).
19  This claim thus satisfies the first part of the *Strickland* test.

20      But Mr. Rodriguez has not satisfied the second part of the *Strickland* test by
21  demonstrating prejudice.  As summarized above, he must either demonstrate that he would have
22  obtained a superior plea agreement or gone to trial.  *See id.* at 788.  No evidence suggests
23  Mr. Rodriguez could have obtained a better plea bargain.  He has not, for example, identified
24  similar cases in which the government agreed to accept pleas to non-removable offenses, such as
25  the defendant had done in *Rodriguez-Vega*.  *See id.* at 788–89.  Nor has he offered statistical
26  evidence about the proportion of similarly situated defendants who obtained relief.  *See United*
27  *States v. Raya-Vaca*, 771 F.3d 1195, 1209 (9th Cir. 2014), *abrogated on other grounds by Dep't*
28  *of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020).  Nor does any evidence suggest

9

Mr. Rodriguez "settled on a charge in a purposeful attempt to avoid an adverse effect on [his] immigration status." *Rodriguez-Vega*, 797 F.3d at 789. To be sure, avoiding removal was likely his hope, but the record here does not permit the court to conclude that he accepted the charges in his plea agreement in a strategy that was calculated to avoid removal. *See id.* ("[The defendant] rejected an initial plea bargain containing a stipulated removal provision, and accepted the revised plea bargain only after this provision had been removed."). The favorability of his plea agreement also bears emphasis. It allowed him to convert a ten-year minimum sentence into a custodial term of only one year and one day.

Mr. Rodriguez does claim, however, that he would have demanded a trial if his attorney had told him removal was a virtual certainty. *See* Rodriguez Decl. ¶ 2. And "[i]t is often reasonable for a non-citizen facing nearly automatic removal to turn down a plea and go to trial risking a longer prison term, rather than to plead guilty to an offense rendering her removal virtually certain." *Id.* at 789. After all, a client's desire to remain in the United States "may be more important to the client than any potential jail sentence." *Padilla*, 559 U.S. at 368 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 322 (2001), *superseded by statute on other grounds as stated in Nasrallah v. Barr*, 140 S. Ct. 1683, 1690 (2020)).

But the record does not match Mr. Rodriguez's current focus on the immigration consequences of his plea. During the plea hearing, after learning from the government itself that he faced a likely removal and after conferring with Mr. Ensminger off the record, he still chose to plead guilty. *See* Hr'g Tr. at 14–15. Overwhelming evidence would likely have been presented at trial. *See* Factual Basis at 1–2 (describing likely testimony of confidential informant and Mr. Rodriguez's post-*Miranda* confession that he was being paid to transport drugs to informant). Mr. Rodriguez also voiced this conclusion on the record, stating he saw no better option than to plead guilty under his agreement with the government. *See* Hr'g Tr. at 7–8.

For these reasons, this case stands in contrast to others in which defendants have established they would have moved forward to trial if counsel had been effective during plea negotiations. No testimony here, for example, shows "deportation was the determinative issue in [Mr. Rodriguez's] decision whether to accept the plea deal," *Lee v. United States*, 137 S. Ct.

10

1958, 1967 (2017), or that he placed "particular emphasis" on possible deportation during plea negotiations or went to "great lengths" to avoid removal, *United States v. Kwan*, 407 F.3d 1005, 1017 (9th Cir. 2005) (quoting *Hill v. Lockhart*, 474 U.S. 52, 60 (1985)), *abrogated on other grounds by Padilla*, 559 U.S. 356. Nor is it apparent Mr. Rodriguez had a "single-minded focus" on avoiding removal, as did the defendants in *United States v. Swaby* and *Kovacs v. United States*. *See* 855 F.3d 233, 237, 242 (4th Cir. 2017) (explaining defendant had accepted a plea specifically because his counsel advised him—incorrectly, as it turned out—that conviction would permit him to stay in United States); 744 F.3d 44, 52–53 (2d Cir. 2014) (explaining defendant accepted the negotiated charge "for the sole reason that [the attorney] believed it would not impair [his] immigration status"). He does not claim to have had "numerous conversations" with his attorney during plea negotiations about immigration consequences, and he did not reject an initial plea agreement with provisions unfavorable to his immigration status. *See Rodriguez-Vega*, 797 F.3d at 781. Nor does he lack "any ties" to Mexico, his birthplace, as was true of the defendant in *Lee*. *See* 137 S. Ct. at 1968. Mr. Rodriguez is bilingual and spent most of his childhood in Mexico, he completed nine years of school there, many of his family members lived there at the time of his sentencing, and at sentencing at least, his immediate family was considering whether to move to Mexico—although the family was "unsure" about the move, and removal would likely separate him from his young daughter. *See* Presentence Rep. at 8–9, ECF No. 96.

In sum, although many people facing near-certain removal may prefer to wager many years' incarceration and removal against even a small chance of a not-guilty jury verdict and the right to remain in the United States, *see Lee*, 137 S. Ct. at 1968–69, the record does not permit the court to reach that conclusion here. The record does not support Mr. Rodriguez's claim that if he had heard the words "virtual certainty" rather than "difficult but do-able," he would have abandoned the plea agreement. It seems instead that he decided to stick with the agreement because he thought he had no other realistic option and because he hoped it gave him a fighting chance of staying in the United States. His motion appears to be the product of doubts in retrospect about how "he would have pleaded but for his attorneys' deficiencies." *Id.* at 1968.

District courts within this circuit have denied § 2255 motions in comparable circumstances. *See, e.g.*, *United States v. Hawthorne*, No. 09-00068, 2018 WL 6011538, at *5 (C.D. Cal. Apr. 5, 2018); *United States v. Garcia*, No. 99-0699, 2017 WL 3669542, at *6–7 (C.D. Cal. Aug. 24, 2017).

Mr. Rodriguez's second claim fails the *Strickland* test for similar reasons. It was reasonable for Mr. Ensminger to urge Mr. Rodriguez not to withdraw his plea prior to sentencing. If he had successfully withdrawn his plea, he would have faced two charges, each with a mandatory minimum sentence of ten years' incarceration, rather than one charge and the government's recommendation for a much lower sentence. His plea agreement also provides that if Mr. Rodriguez successfully moves to withdraw his plea, his statements "to the government or other designated law enforcement agents . . . , whether before or after [the] plea agreement" would be "admissible in evidence" at trial. Plea Agmt. at 4–5. This provision means his admissions would have added to the case the government had already built against him. The court therefore cannot conclude that Mr. Ensminger's advice fell below professional standards under the first prong of the *Strickland* test. Under the second part of the *Strickland* test, for the reasons described above, there is no reasonable probability that Mr. Rodriguez would have decided to withdraw his plea. The hope of a more favorable plea agreement is, on this record, speculative. Nor does the record support Mr. Rodriguez's claim that the immigration consequences of a conviction were so crucial to his decision that he would have preferred a trial and likely conviction on two counts rather than one, as discussed above.

## V.   CERTIFICATE OF APPEALABILITY

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(b)(2). "To satisfy this standard, the applicant must show that 'jurists of reason could disagree with the district court's resolution of his case or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Mitchell v. United States*, 971 F.3d 1081, 1083

(9th Cir. 2020) (per curiam) (alterations omitted) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

Mr. Rodriguez's first claim presents a close question: whether Mr. Rodriguez would have gone to trial or negotiated a different plea agreement if he had known that removal was a virtual certainty. If so, then he would be entitled to relief under § 2255 under the analysis above. This issue is "adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Reasonable jurists may also disagree about whether the waiver provisions in Mr. Rodriguez's plea agreement are enforceable against his third claim. As explained above, the Ninth Circuit has not yet considered whether ineffective assistance claims can be waived if they are not directly related to the validity of the plea itself. *See supra* section II. Some courts have also entertained ineffective assistance claims targeting advice given both before and after plea-agreement negotiations. *See, e.g.*, *Cohen*, 888 F.3d at 683 ("[W]e have recognized that an appeal waiver does not preclude . . . contention[s] that 'proceedings following entry of the guilty plea were conducted in violation of [the defendant's] Sixth Amendment right to counsel.'" (quoting *United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005)).

The court therefore issues a certificate of appealability for Mr. Rodriguez's first and third claims. The court declines to issue a certificate of appealability for his second claim. Mr. Ensminger reasonably urged Mr. Rodriguez not to abandon his plea agreement, as explained above.

## VI. CONCLUSION

The court orders as follows:

1. The government's motion to dismiss is **granted in part**. Mr. Rodriguez waived his right to pursue his third claim under 18 U.S.C. § 2255. The motion is **denied** in all other respects.

2. Mr. Rodriguez's motion to vacate his sentence and conviction under § 2255 petition is **denied**.

3. A certificate of appealability is **granted** for the following questions: (a) whether Mr. Rodriguez has established that if his attorney had correctly advised him that

13

1         removal was a "virtual certainty" under the terms of his plea agreement, he would

2         have obtained a more favorable agreement or would have proceeded to trial; and

3         (b) whether Mr. Rodriguez waived his third claim of ineffective assistance, *see*

4         Mot. Vacate at 5, ECF No. 146.

5   4.   The request to proceed in forma pauperis is **granted**. An examination of the

6         request at ECF No. 147 shows Mr. Rodriguez cannot pay for the costs of suit. *See*

7         28 U.S.C. § 1915(a).

8   5.   This order is **stayed sixty days** to permit Mr. Rodriguez to seek a stay pending

9         appeal.

10 This order resolves ECF Nos. 146, 147 and 161.

11 IT IS SO ORDERED.

12 DATED: January 14, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE